[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------

No. 99-10127

-------------------------------------------

D. C. Docket No. 97-00270-CV-1

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**JAN 24 2001**
**THOMAS K. KAHN**
**CLERK**

JAMES ANDERSON, JR.

Plaintiff-Appellee,

versus

BURKE COUNTY, GEORGIA,
ELLIS GODBEE, et al.,

Defendants-Appellants.

-------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Georgia
-------------------------------------------------------------------
**(January 24, 2001)**

Before EDMONDSON and BIRCH, Circuit Judges, and BLACKBURN*,
District Judge.

_____

*     Honorable Sharon Lovelace Blackburn, U.S. District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

Plaintiff filed suit against Defendants pursuant to 42 U.S.C. §1983 alleging that Defendants violated his rights to freedom of speech and freedom of association. The district court denied the individual Defendants qualified immunity on Plaintiff's freedom of speech claim but granted the individual Defendant's qualified immunity on Plaintiff's freedom of association claim. Defendants appeal the district court's denial of summary judgment on Plaintiff's First Amendment free speech claim based on qualified immunity.

## FACTS

Plaintiff James M. Anderson, Jr., has been employed by Defendant Burke County, Georgia, with its Emergency Management Agency ("EMA") since October 1987. He was promoted to the rank of Captain in March 1990. Since August 1996, Plaintiff has been the elected President of the International Association of Fire Fighters Local 3727, which is a union of the fire fighters and rescue service employees employed with the County EMA.

In August and early September 1996, Plaintiff -- as Union president -- prepared and distributed a questionnaire to candidates for political office in Burke County. This questionnaire asked the political candidates to respond to questions

2

about the EMA. Although Plaintiff sent copies to the political candidates only,

Defendant Earl Porterfield, Chief of the County EMA, obtained a copy. Defendant

Porterfield sent a memorandum to Plaintiff concerning the political questionnaire

stating that "[a]s a Captain with Burke County EMA, it is your responsibility to

maintain public confidence in the ability of this organization to carry out its public

safety mission" and threatened Anderson that "[a]ny further occurrences of this

nature will result in either a demotion or termination."

On March 10, 1997, Alfred K. Whitehead, General President of the

International Association of Fire Fighters, wrote a letter to Defendant Porterfield

on Plaintiff's behalf. Whitehead expressed concerns over Defendant Porterfield's

memorandum threatening Plaintiff with discipline. On 12 March 1997, Defendant

Porterfield placed Plaintiff on probation for one year, and on 21 April 1997, he

demoted Plaintiff two grades, from Captain down to Private.[1]

---

[1]Defendant Porterfield denies that he put Plaintiff on probation for the statements he made in the questionnaire. Defendant explained that he placed Plaintiff on probation because of Plaintiff's failure to update timely his certification file and for his failure as a supervisor to ensure that "all memo's are properly posted, and that all members of the station are aware of the contents." Defendant Porterfield also states that his reasons for demoting Plaintiff were (1) Plaintiff's ongoing probation for failure to turn in paperwork and supervise; (2) his past disciplinary history; and (3) his failure to comply with the memorandum about the submission of job questionnaire and his failure to supervise in relation to that same memorandum. But because Defendant's reasons for taking adverse employment action against Plaintiff are not critical to our determination of qualified immunity, we do not address these points in this opinion.

3

Because we conclude that the individual Defendants were entitled to qualified immunity on Plaintiff's free speech claim, we REVERSE the district court's decision.

DISCUSSION

In determining a defendant's claim of qualified immunity, we ordinarily first determine whether the plaintiff has alleged a deprivation of a constitutional right and if so, we then determine whether that right was clearly established at the time of the alleged violation. See Wilson v. Layne, 119 S.Ct. 1692, 1697 (1999).

For a public employee to sustain a claim of retaliation for protected speech under the First Amendment, the employee must show by a preponderance of the evidence that: (1) the employee's speech is on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. See Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). Once the employee succeeds in showing the preceding factors, the burden then

shifts to the employer to show, by a preponderance of the evidence, that "it would have reached the same decision...even in the absence of the protected conduct." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

The first two factors are questions of law designed to determine whether the First Amendment protects the employee's speech. See Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1564 (11th Cir. 1995). The second two factors are questions of fact designed to determine whether the alleged adverse employment action was in retaliation for the protected speech. See id.

## MATTERS OF PUBLIC CONCERN

Here the speech, in the form of a questionnaire, addressed political candidates about their position on certain issues concerning the employment and staffing conditions of the Burke County's fire and rescue services.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 103 S.Ct. at 1687.[2] Some of the questions

---

[2]Plaintiff points to nothing specific in the record to illustrate that the content, form and context of his questionnaire will support a finding that his speech addresses a matter of public concern. Instead, he simply relies on the face of the questionnaire to argue that his speech falls under First Amendment protection.

presented in the questionnaire referred to matters such as grievance procedures, vacation policies, promotion guidelines and pension benefits. We believe these topics relate to employment issues and just because they arise in a governmental office does not transform them into matters of public concern. See Connick, 103 S.Ct. at 1690-91 (finding that questionnaire addressing matters such as office morale and need for grievance committee did not address matters of public concern); Phares v. Gustafsson, 856 F.2d 1003, 1009 (7th Cir. 1988) (dispute over vacation time not matter of public concern); Gros v. Port Washington Police Dist., 944 F.Supp. 1072, 1081 (E.D. N.Y. 1996) (police officer speech involving his own promotion not matter of public concern); Broderick v. Roache, 751 F.Supp. 290, 293 (D.Mass. 1990) (subjects affecting the police department's employment policies, such as proposed promotional exam for lieutenants and failure to promote police officer, did not support §1983 claim).

In addition, none of these questions explicitly purport to advance any citizen interest. Therefore, reading these particular questions together, in context, further supports the determination that the concerns about grievances procedures, vacations, promotions, and benefits are nothing more than a list of employment interests, which would ordinarily only concern people in their capacities as EMA

employees, not as citizens in general. Because these questions do not address issues of public concern, they are not protected by the First Amendment.

The questionnaire, however, does address concerns about alleged understaffing in the 911 system and of engine companies, physical fitness standards required for certain employees, and public tax consequences of high employee turnovers. Because this kind of material may relate to the political, social or other interest of the community, we will accept that this speech reflects a matter of public concern. See Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1564 (11th Cir. 1995) (noting, in dicta, basic fire and rescue services are matters of public concern).

## BALANCING THE PARTIES' INTERESTS

The second consideration of a First Amendment free speech claim is commonly referred to as Pickering balancing. Here, a plaintiff must show that his First Amendment interests, as a citizen, in commenting upon matters of public concern outweigh the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees. See Pickering v. Bd. of Educ., 88 S.Ct. 1731, 1734-35 (1968).

7

Plaintiff argues, as the district court concludes, that the government failed to offer evidence of disruption or disturbance with the County EMA's ability to perform its mission. But a public employer need not wait for disruption or disturbance to occur before acting. See Connick, 103 S.Ct. at 1692 ("[W]e do not see the necessity for an employer to allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action.").

Furthermore, the district court concluded that Plaintiff's speech deserved greater weight because the complaints of under-staffing in the 911 system and minimum staffing at the engine companies were issues of strong public concern. The district court relies on Beckwith for this determination. But Beckwith is a significantly different case. In Beckwith, the plaintiff publicly voiced worries, at a public meeting of the city council, that eliminating the city's paramedic program would have a dangerous effect on the community. He mobilized public opinion on the proposal and urged citizens to attend the next city council meeting either to oppose or to support the proposal. We noted, in dicta, that the plaintiff had a "strong interest in informing the public about policies he believed were dangerous to the City's citizens." Beckwith, 58 F.3d at 1564.

The district court's reliance on Beckwith is misplaced because Plaintiff's questionnaire did not bring to the public's attention a policy or program on account of the policy's or program's dangerousness. Nowhere in the questionnaire did Plaintiff inform anyone that the alleged understaffing would create a condition dangerous to the citizens. Plaintiff, in the questionnaire, does allege, however, that the employees are underpaid, which shows us that the questionnaire's tie to supposed understaffing was used merely to gripe of being overworked and underpaid.

Nor did Plaintiff state that his objection to the physical fitness requirements had to do with the effectiveness of the fire and rescue squad's performance. The questionnaire instead suggested that employees should not be fired simply because they could not meet certain physical standards. While Plaintiff did allege that the current employee turnover rate has a tax impact on the public, this effect is not the kind of dangerous condition illustrated in Beckwith. Moreover, Plaintiff uses this concern to propel his real inquiry: whether the candidates would support a longevity system of pay increases.

When read in its totality, the questionnaire had far more to do with Plaintiff's grievances as an employee than with concerns of a public nature. See Connick, 103 S.Ct. at 1690-91 (questionnaire did not seek to inform public about

9

actual or potential wrongdoing or breach of public trust and therefore did not receive First Amendment protection).

Furthermore, Plaintiff limited the questionnaire's audience to candidates who were seeking positions on the Burke County Board of Commissioners. Because of this limited audience, Plaintiff's argument that he was addressing a public concern garners less weight in our balancing process. See Morgan v. Ford, 6 F.3d 750, 754 n.5 (11th Cir. 1993) (employee's attempt to make speech public is a relevant factor in public concern analysis); Johnson v. University of Cincinnati, 215 F.3d 561, 588 (6th Cir. 2000) (had plaintiff presented concerns in public venue, instead of letter to president and Board of trustees, balancing would have weighed in plaintiff's favor) (Kennedy J., concurring and dissenting); Brewster v. Bd. of Educ., 149 F.3d 971, 981 (9th Cir. 1998) (speech directed at limited audience weighs against protected speech).

Whatever Plaintiff's intentions, we conclude, as a matter of law, that his questionnaire did not present the kind of speech that was of great public concern for the Pickering balancing test.

The government, acting as employer, is afforded broad discretion for its acts. See Johnson v. Clifton, 74 F.3d 1087, 1092 (11th Cir. 1996). Defendant argues that it has a legitimate interest in ensuring that Plaintiff "maintain[s] public

10

confidence in the ability of [the Burke County fire and rescue services] to carry out its public safety mission." We accept this as a compelling and legitimate government interest. See Connick, 103 S.Ct. at 1692 (government has a "legitimate purpose in promoting efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service.") (citation omitted).

In addition, a paramilitary organization, such as a fire department -- see Leonard v. City of Columbus, 705 F.2d 1299 (11th Cir. 1983) (suggesting fire department may be paramilitary organization) ; see also Figueroa-Rodriguez v. Lopez-Rivera, 878 F.2d 1488, 1489 (1st Cir. 1988) (noting paramilitary nature of fire departments) -- has a "need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers." Hansen v. Soldenwagner, 19 F.3d 573, 577 (11th Cir. 1994) (citations omitted); see also Busby v. City of Orlando, 931 F.2d 764, 774 (11th Cir. 1991) (noting special disciplinary concerns of quasi-military organizations); Thorne v. City of El Segundo, 726 F.2d 459, 470 n.10 (9th Cir. 1983) (state's interest in regulating speech is greatest when paramilitary organizations are involved).

Because we conclude that Defendants' interest, as an employer, in promoting the efficiency of the public services it performs through its employees, outweighs whatever interest Plaintiff -- a ranking officer in the agency -- may have in commenting upon these matters as he did, Plaintiff cannot sustain a claim for retaliation under 42 U.S.C. §1983.

We further conclude that, even if we are mistaken on the merits, the applicable law had not already been clearly established in the context of these circumstances. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994) ("Because Pickering requires a balancing of competing interests on a case-by-case basis...only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights."); see also Lassiter v. Alabama A&M University, 28 F.3d 1146, 1150 (11th Cir. 1994). The individual Defendants are therefore entitled to qualified immunity.

REVERSE.