[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14170
Non-Argument Calendar

_____

D. C. Docket No. 05-01463-CV-T-27-TBM

KAREN E. KEELER,

Petitioner-Appellant,

versus

FLORIDA DEPARTMENT OF HEALTH,
Division of Disability Determinations,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 27, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Karen E. Keeler ("Keeler") appeals pro se the district court's grant of summary judgment in favor of her former employer, the Florida Department of Health ("Department"), based upon the court's finding that Keeler failed to establish a prima facie case of discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"). After review of the record and the parties' briefs, we AFFIRM.

## I. BACKGROUND

Keeler began working at the Department's Division of Disability Determinations as a Records Technician in September 2003. R1-32 at 187. She was directly supervised by Mae Harper, who was supervised by Bonnie Cain. Id. at 24-25. On 15 September 2004, Keeler told Cain that she wanted to transfer to a vacant Senior Clerk position. Id. at 24, 26-27. During this conversation, Keeler began to cry and explained to Cain that her current position was too stressful and that her unit was "being forced to squeeze in nine hours of work into an eight-hour day." Id. at 27-29. Keeler did not at that time disclose to Cain that she suffered from any disabilities. Id. at 27. Cain told Keeler that she was doing fine in her current position, but indicated that she would speak to her supervisor, Alan Shaffren, about transferring Keeler to the open position. Id. at 25, 29, 44-45.

In a 16 September 2004 follow-up e-mail to Cain, Keeler reiterated her

interest in the Senior Clerk position and stated that "[t]he stress and volume (regardless of it's [sic] simplicity) of work expected from [her current] position is more often than not, overwhelming." Id., Exh. G. The next day, Keeler sent Cain another e-mail, in which she indicated that she was "capable of maintaining [her] position for an extended period of time just encase [sic] you have an alternative position that you would prefer me in as opposed to the senior clerk position." Id., Exh. H. Sometime thereafter, Cain informed Keeler that Shaffren had denied Keeler's request for a job transfer because he "[did]n't like to demote his employees" and because they believed Keeler was "doing fine" in her position as a records technician. Id. at 25, 64.

On Friday, 22 October 2004, Harper and Cain met with Keeler to discuss Keeler's work performance. Id. at 105-06. During this meeting, Keeler admitted that she had been working overtime in order to complete her work assignments. Id. at 112 & Exh. A. Harper and Cain reminded Keeler that she was not to work overtime without prior approval and instructed her to adhere to her scheduled work hours. Id. at 105-06, 112 & Exh. A. Keeler testified at her deposition that she "broke down" and started crying during the meeting. Id. at 207-08. When she stated "I can't believe that this is happening to me," Cain responded, "Well, that's what happens when you stir the pot." Id. at 208. Later that same day, Cain

3

observed Keeler, who was scheduled to work from 7:30 A.M. to 4:00 P.M., leaving the building at approximately 4:40 P.M. Id. at 117 & Exh. C. The following Monday, Cain confronted Keeler about working until 4:40 P.M. after being specifically directed not to work overtime without prior approval. Keeler denied that she was working after 4:00 P.M. and told Cain that she was in the restroom and was making personal telephone calls. See id., Exh. J at 3. Keeler did not report the extra time she worked on 22 October on her time sheet for the pay period from 22 October through 4 November. Id.

On 26 October 2004, Harper issued a memorandum of counseling to Keeler in which she again advised Keeler that "[w]orking unapproved overtime constitutes insubordination" and that "violating agency policies and procedures . . . will not be tolerated." Id. at Exh. A. The memorandum also noted that Keeler had been given fourteen cases to input into the computer system on 22 October, but had only completed seven cases by the end of the day. Id. Keeler was warned that failure to complete her assigned tasks in a timely manner "constitutes poor performance, inefficiency and could also be negligence." Id.

In her written response, Keeler disclosed that she suffered from Attention Deficit Hyperactivity Disorder ("ADHD"), a "neurological disability," and Obsessive Compulsive Disorder ("OCD"), a "mental disability," and took daily

4

medication for both disabilities.  Id., Exh. D; see also id. at 66.[1]  She stated that the recent discussions regarding her work performance were causing "an even greater amount of stress and pressure . . . which [was] hindering [her] performance even further," and explained that she had requested a transfer to avoid the "current stressful position."  Id. at Exh. D.  When asked during her deposition to identify the major life activities that were significantly impaired by her disabilities, Keeler stated only that she was unable to "stay organized" and to "keep track of things" and admitted that she was able to bathe herself, brush her own teeth, and perform normal personal grooming.  Id. at 159-64.

Keeler further admitted that she did not at any time prior to the counseling meeting with Cain and Harper disclose to her supervisors that she suffered from any disabilities.  Id. at 27, 44, 162, 209-10.  She claimed that Cain nevertheless should have been aware of her disabilities based on the e-mails she sent to Cain in which she indicated that her job was "stressful" and that the "stress and volume" of work was "overwhelming."  Id. at 66-67, 203-04.  According to Keeler, these were "buzz words" that "indicated an underlying problem that should have been addressed."  Id.  Keeler also averred that Cain should have been aware of her disabilities because Keeler cried when she requested a transfer to a lower position

---

[1] The Senior Clerk position was no longer available at the time Keeler submitted her response.  Id. at 157.

on 15 September 2004 and because she had a habit of taking copious notes, which, according to Keeler, was a symptom of her OCD, ADD/ADHD, and anxiety. Id. at 66, 201.

On 10 December 2004, Keeler received a letter from the director of her division notifying her that her employment was being terminated. Id., Exh. I. The letter advised Keeler that her "action in working unauthorized overtime [on 22 October] after being specifically directed earlier in the day not to do so constitute[d] Poor Performance, Insubordination, Violation of Law of Agency Rules, and Conduct Unbecoming a Public Employee," and that her actions in "falsely stating to Ms. Cain that [she] had performed no work after 4:00 p.m. on October 22, 2004" and "falsifying [her] time and attendance record constitut[ed] Violation of Law or Agency Rules and Conduct Unbecoming a Public Employee." Id. at 3.

Keeler filed the instant pro se complaint against the Department on 4 August 2005, alleging "retaliation" and "failure to uphold the laws set forth by the Americans with Disabilities Act." R1-1 at 1. She stated that the Department denied her request for a job transfer in retaliation for her "acknowledging inadequacies within [her] unit and for saying that [employees in her unit] were overworked." Id. at 2. She claimed that the Department terminated her "to let the

6

others in [her] unit knows [sic] what would happen to them if they begin [sic] 'Stirring the Pot.'" Id. Keeler later clarified during her deposition that her allegation was that the Department retaliated against her "because [she] told Mrs. Cain that there was a problem with our workload; that the employees in [her] unit . . . [were] being forced to work – to put in nine hours of work in an eight-hour day." R1-32 at 198-99. She alleged additionally that the Department "violated the law by denying [her] an accommodation." R1-1 at 2.

In March 2006, the Department filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that Keeler failed to state either a failure-to-accommodate or retaliation claim under the ADA. The district court denied the motion, noting that "[i]t [was] difficult to discern from the face of the Complaint specifically what ADA violations Plaintiff alleges." R1-18 at 2 n.2. The court first found that "[Keeler]'s allegations concerning the [Department]'s knowledge of her disability and her request for an accommodation [were] not crystal clear" and, with respect to her retaliation claim, that "it [was] unclear whether 'Stirring the Pot' include[d] protected activity under the ADA." R1-18 at 3-4.[2]

---

[2] The district court found that the Department was entitled to Eleventh Amendment immunity from claims for monetary damages brought under Title I of the ADA and dismissed Keeler's complaint to the extent that it asserted such a claim. Id. at 2-3, 5.

On 16 November 2007, the district court issued a case management and scheduling order, which set a discovery cut-off date of 5 January 2008. R1-27 at 2. The order also established a deadline for filing motions to amend pleadings that was ten days after the discovery cut-off date and made clear that any such motions would be disfavored. Id. On 18 January 2008, Keeler filed a "Motion for an Extension of Time Within Which to File a Motion to Seek Leave from the Court to Amend Plaintiff's Complaint," in which she indicated that she needed additional time "to correctly and more specifically address which laws are applicable to [her] [c]omplaint" and requested that the court extend until 22 January 2008 the deadline for filing a motion to amend. R1-29 at 1-2. The district court denied her motion as moot, noting that she never filed a motion to amend her complaint, nor did she attach a copy of the proposed amended complaint to her extension motion. R1-30.

On 15 February 2008, Keeler moved the court to reconsider its ruling, arguing that she had submitted the extension motion within the time-frame for filing motions to amend and that she correctly waited for the court to grant her an extension of time before submitting either a motion to amend or an amended complaint. R1-33 at 1-3, 5. That same day, Keeler also filed a motion to amend her complaint, in which she alleged that the Department had violated the First Amendment; 42 U.S.C. § 1983; Section 504 of the Rehabilitation Act, 29 U.S.C.

8

§ 794; the Fair Labor Standards Act; and Titles I, II, and IV of the ADA. R1-34 at 1-3. Attached to the motion was Keeler's amended complaint, which referred to these statutes. Id., Amended Complaint. The district court denied both motions, finding first that although its order disposing of the Department's motion for judgment on the pleadings put Keeler on notice as early as January 2007 that her complaint was not well-pleaded, Keeler offered no explanation for her delay in seeking leave to amend. R1-39 at 1, 3. It further found that Keeler's amended complaint included "new, distinct claims" and would therefore unfairly prejudice the Department and "invariably delay a resolution of the case." Id. at 3. On this point, the court noted that the case had been pending for over two years, discovery was closed, a trial date was set, and the Department's motion for summary judgment, which the Department had filed on 15 February 2008, was pending. Id. at 3-4; see R1-31. Permitting Keeler to add new claims at this late stage of the litigation would, it found, undermine "the critically important concept of finality." R1-39 at 4 (quotation marks and citation omitted). Finally, the court noted that Keeler's amended complaint failed to state claims upon which relief could be granted and would not survive a motion to dismiss in any event. Id.

In its motion for summary judgment, the Department argued that Keeler could not establish a prima facie case of disability discrimination because she

9

failed to show: (1) that she was disabled; (2) that she could perform her job with or without reasonable accommodations; or (3) that the Department treated similarly situated persons without disabilities more favorably. R1-31 at 14-17. The Department argued further that, even if Keeler could satisfy the elements of a prima facie case of discrimination, it had legitimate, nondiscriminatory reasons for dismissing her, namely, her misconduct and poor performance, and she had failed to show that those reasons were pretextual. Id. at 17-18. With respect to Keeler's allegations of retaliation, the Department argued that Keeler failed to state a claim because she did not allege that she had engaged in activity protected by the ADA, such as filing of an EEOC charge or opposing workplace discrimination. Id. at 19-20. Rather, Keeler simply complained that there was too much work and not enough time to accomplish that work. Id. at 20.

Keeler responded that in characterizing her suit as an employment discrimination case under Title I of the ADA, the Department had ignored "the other part of the complaint, which was retaliation not for ADA but for speaking out about overtime work." R1-41 at 1, 11. Keeler stated that the Department's arguments regarding the ADA were designed to distract the court from "the real issues," which were retaliation under the First Amendment and the FLSA, and "failure to consider an accommodation." Id. at 19. With respect to the latter,

10

Keeler argued that the Department should have been aware that her request for a transfer was a request for an ADA accommodation. Id. at 12-13. Keeler subsequently supplemented her response with a notarized affidavit in which she stated, inter alia, that the Department's retaliation against her began soon after the her 15 September meeting with Cain and culminated in her dismissal on 9 December. Id. at 6, 8. According to Keeler, Cain's comment, "'Well that's what happens when you stir the pot,'" related to her "speaking out about uncompensated overtime work." Id. at 6-7.[3]

The district court granted the Department's motion for summary judgment after finding that Keeler had failed to meet her burden of establishing either a prima facie case of disability discrimination or a prima facie case of retaliation under Title I of the ADA. R1-54. With respect to her failure-to-accommodate claim, the court found that Keeler did not show that: (1) she had a "disability" as defined by the ADA; (2) the Department was aware of her alleged disability when it denied her request for a transfer; or (3) her request for a transfer was a request for a reasonable accommodation. Id. at 10-17. With respect to her retaliation

---

[3] Attached to Keeler's affidavit were unauthenticated letters from physicians, unauthenticated typewritten notes, and a job description for the records technician position. R1-47, Keeler Aff., Exhs. A, B, C, D, E, F, G. The district court denied the Department's motion to strike Keeler's affidavit and supporting documents, but indicated that it would not consider the unauthenticated documents, hearsay evidence, and improper argument in ruling on the summary judgment motion. See R1-53.

11

claim, the court found that Keeler failed to show that she engaged in any activity that was protected by the ADA. Id. at 17-19.[4] This appeal followed.

## II. DISCUSSION

On appeal, Keeler argues that the district court erred in granting summary judgment in favor of the Department and that it abused its discretion in denying her motion for an extension of time, her motion to reconsider, and her motion to amend the complaint.

A.     Department's Motion for Summary Judgment

We review de novo a district court's grant of summary judgment, "viewing the evidence in the light most favorable to the party opposing the motion." Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (per curiam). A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c).

The ADA, as amended, provides that "[n]o covered entity shall discriminate

---

[4] Keeler filed several post-judgment motions, insisting that summary judgment was improper and seeking to introduce additional evidence. R1-56; R1-57; R1-58; R1-59. While Keeler indicates in her brief that she seeks review of the district court's denial of these motions, she offers no argument in support of these challenges. Accordingly, they are deemed waived. See United States v. Gupta, 463 F.3d 1182, 1195 (11th Cir. 2006) (issues on which party provides no argument or legal support are deemed waived).

12

against a qualified individual on the basis of disability in regard to . . . employee compensation, job training, and other terms, conditions, and privileges of employment."[5] 42 U.S.C. § 12112(a) (2009). In order to establish a prima facie case of employment discrimination under the ADA, a plaintiff must show that: (1) she has a disability; (2) she is a qualified individual; and (3) the employer discriminated against her because of her disability. See Greenberg v. BellSouth Telecomms., Inc., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (interpreting prior version of Act).

A "disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The Equal Employment Opportunity Commission ("EEOC") has further defined "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Greenberg, 498 F.3d at 1264 (quoting 29 C.F.R. § 1630.2(i)). For purposes of the third element, an employer unlawfully discriminates against an employee because of her disability by "not making reasonable accommodations to the [employee's] *known* physical or mental limitations" if the employee is otherwise qualified to

---

[5] Recent amendments to the Americans with Disabilities Act, 42 U.S.C. § 12112 et seq. ("ADA") became effective on 1 January 2009. See 29 U.S.C. § 705, Effective and Applicability Provisions (providing that amendments pursuant to Pub. L. 110-325, § 8, Sept. 25, 2008, 122 Stat. 3559 became effective on 1 January 2009).

perform her job and the accommodation would not impose an undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A) (emphasis added); see also Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1262 (11th Cir. 2007).

In this case, Keeler failed to show that the Department knew of her alleged impairments when it denied her request for a transfer. Keeler testified in her deposition that "nobody knew" of her disabilities when she asked Cain to be transferred to the Senior Clerk position and she admitted that she did not disclose her disabilities to her supervisors until after that position had been filled. R1-31 at 27, 154-55, 157. Nonetheless, Keeler asserts that the Department should have known of her limitations because she took lots of notes, cried while speaking to Cain about the transfer, and advised Cain that her position as a records technician was stressful and overwhelming. This behavior was not, however, sufficient to put the Department on notice that Keeler was disabled because it in no way suggested that Keeler was substantially limited in any major life activity.

Because the Department did not have sufficient knowledge of Keeler's mental impairments, the district court correctly concluded that the Department could not be liable for any failure to accommodate. See, e.g., Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1186 (11th Cir. 2005) (holding that, in discriminatory discharge case, employer could not have fired employee "because of" a disability

14

that she knew nothing about).[6]

B.    Denial of Motion for Extension of Time, Motion for Reconsideration, and Motion to Amend

Keeler argues that she filed her motion for an extension within the time prescribed for filing a motion for leave to amend, that she was complying with local court rules by waiting for the court's ruling on her extension motion before filing a motion for leave to amend, and that the amended complaint would not have unfairly prejudiced the Department because it concerned the same facts as the original complaint. Keeler further contends that in ruling on her motion for an extension, motion to reconsider, and motion to amend, the district court "never addressed the other issue raised in the complaint, which was retaliation under the FLSA and First Amendment." Appellant's Brief at 9. According to Keeler, her complaint stated a claim for retaliation in violation of the First Amendment and the FLSA because she alleged that she was terminated for speaking out about the inadequacies of her unit and for reporting that employees were forced to work uncompensated overtime in order to keep up with their heavy workloads. She asserts that it was necessary for her to amend her complaint once "it became

_____

[6] Keeler does not challenge the district court's finding that she failed to establish a prima facie case of retaliation under the ADA and thus has abandoned this issue on appeal. See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 972 (11th Cir. 2008) ("[A]n argument not included in the appellant's opening brief is deemed abandoned.").

15

apparent [that] the only violations of the law that would be considered by the District Court would be [ADA violations]." Id. at 10. We first address whether the district court erred in denying Keeler's motion to amend and related motions and then whether the district court erred in construing her complaint as alleging claims arising only under Title I of the ADA.

We review for abuse of discretion a district court's denial of a motion for extension of time. See Young v. City of Palm Bay, Fla., 358 F.3d 859, 863 (11th Cir. 2004). We also review for abuse of discretion a district court's denial of a motion to amend the pleadings. See Campbell v. Emory Clinic, 166 F.3d 1157, 1160-61 (11th Cir. 1999). Under this standard, "[t]he district court has a range of options," and we will not disturb the district court's decision unless it constitutes a clear error in judgment. Young, 358 F.3d at 863.

A party may amend her complaint after a responsive pleading is served only by leave of court or by written consent of the adverse party. See Fed. R. Civ. P. 15(a)(2). Where a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend the complaint should be granted. Fed. R. Civ. P. 16(b). A court does not abuse its discretion in denying a motion to amend when the amendment would prejudice the defendant, follows undue delays, or is futile. See

16

<u>Maynard v. Board of Regents</u>, 342 F.3d 1281, 1286-87 (11th Cir. 2003) (district court did not abuse discretion in denying plaintiff's motion for leave to amend, filed on last day of extended discovery period, because amendment "would have produced more attempts at discovery, delayed disposition of the case, and likely prejudiced" the defendant, and there was no good reason why plaintiff could not have filed motion earlier).

Keeler filed her motion for an extension of time to amend her complaint after the close of discovery and filed her motion to amend over a month after the deadline for such motions had passed. Although Keeler thus was required to show good cause as to why the amendments should be permitted, she offered no explanation in any of her motions as to why she failed to propose her amendments within the time limits prescribed by the court in its scheduling order. As in <u>Maynard</u>, Keeler's proposed amended complaint, which purported to add new claims, would have resulted in additional discovery and delayed disposition of the case. Accordingly, we cannot say that the district court abused its discretion in denying Keeler's motion for an extension of time, motion to reconsider, or motion to amend the complaint.

Although the district court properly denied Keeler leave to amend the complaint, it erred in construing the complaint as asserting only violations of the

17

ADA.  It is well-settled that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006).  While we have little difficulty finding that Keeler's complaint failed to state a claim under the First Amendment,[7] it is less clear whether her complaint adequately stated a claim within the purview of the FLSA's anti-retaliation provision.  The FLSA, which addresses, inter alia, minimum wages, maximum hours, and overtime pay, makes it unlawful for an employer to "discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  Informal complaints are sufficient to trigger this anti-retaliation provision.  See E.E.O.C. v. White, 881 F.2d 1006, 1011 (11th Cir. 1989) (holding that "unofficial complaints

_____

[7] In order to establish a claim of retaliation under the First Amendment, an employee first must show that her speech was protected by the First Amendment. See Anderson v. Burke County, Ga., 239 F.3d 1216, 1219 (11th Cir. 2001) (per curiam).  Constitutional protection attaches to a public employee's speech only where the employee is speaking "as a citizen on a matter of public concern."  Battle v. Board of Regents for Georgia, 468 F.3d 755, 760 (11th Cir. 2006) (per curiam) (quotation marks and citation omitted); see also Vila v. Padron, 484 F.3d 1334, 1339 (11th Cir. 2007) ("The threshold question is whether [the employee] spoke as a citizen on a matter of public concern.").  If the employee is not speaking as a citizen on a matter of public concern, "[she] has no First Amendment cause of action based on . . . her employer's reaction to the speech." Battle, 468 F.3d at 760 (quotation marks and citation omitted).  When Keeler reported to management that records technicians in her unit were working uncompensated overtime, she was speaking in her capacity as an employee on a matter of personal interest, and not as a citizen on a matter of public concern. Cf. Anderson, 239 F.3d at 1220.  Because Keeler's speech did not "relate to the political, social or other interest of the community," id., the First Amendment was not implicated, and her retaliation claim necessarily fails.  See Vila, 484 F.3d at 1339.

18

expressed by [employees] to their employer about unequal pay constitute[d] an assertion of rights protected under the [FLSA].").

Although Keeler's complaint cited the ADA as the statutory basis for her lawsuit, she alleged that she suffered retaliation for reporting uncompensated overtime to Department management. While this type of speech is not entitled to First Amendment protection, it does trigger the FLSA's anti-retaliation provision. See White, 881 F.2d at 1011 (noting that the anti-retaliation provision of the FLSA is "giv[en] a broad construction"). Because Keeler's complaint, liberally construed, may have stated a claim under the FLSA,[8] the district court erred in treating her complaint as alleging only failure-to-accommodate and retaliation claims under the ADA and in confining its summary judgment analysis to those claims.

### III. CONCLUSION

Keeler appeals the district court's grant of summary judgment in favor of the Department. Because Keeler failed to show good cause as to why the court should modify its scheduling order to permit amendment of her complaint, the district court did not abuse its discretion in denying Keeler's motion to amend the

---

[8] In denying Keeler's motion to amend, the district court noted that the proposed claims, which included an FLSA claim, were futile and would not have survived a motion to dismiss. The reasoning underlying this conclusion is not clear, however. See R1-39 at 4.

pleadings. Although we AFFIRM the district court's grant of summary judgment with respect to Keeler's failure-to-accommodate claim, we VACATE its judgment and remand the case for further proceedings because Keeler's complaint, liberally construed, also stated a claim for retaliation under the FLSA.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**