[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-12497
Non-Argument Calendar

————————————————

D.C. Docket No. 1:17-cv-00159-SCJ

CLARENCE COX,

                                        Plaintiff - Appellant,

versus

CLAYTON COUNTY SCHOOL DISTRICT,

                                        Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(February 25, 2019)

Before MARCUS, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Clarence Cox sued his former employer, the Clayton County School District, alleging that he was fired because of his candidacy for county sheriff in violation of his First Amendment rights. *See* 42 U.S.C. § 1983. The district court granted summary judgment to the School District, and Mr. Cox now appeals. After reviewing the record and the parties' briefs, we affirm.

**I**

Under Georgia Law, the Clayton County School District makes its employment decisions through a governing board. At all times relevant to this appeal, the board consisted of nine members. Every year, the board must decide whether to tender a new contract for the ensuing year for each professional employee of the school district. *See* O.C.G.A. § 20-2-211.

In 2013, the School District hired Mr. Cox to serve as Director of Safety and Security, on the recommendation of then-School Superintendent Luvenia Jackson. The board then voted to renew Mr. Cox's contract several times over the following years. On January 26, 2016, Mr. Cox announced at a meeting of his staff that he intended to run for Clayton County Sherriff. On February 1, 2016, the board members held a meeting and reviewed pending contract renewals. They decided not renew Mr. Cox's contract.

2

Mr. Cox brought a claim under 42 U.S.C. § 1983, arguing that the board's decision to terminate his contract was motivated by the fact that he was running for sheriff, and therefore violated his right to free speech under the First and Fourteenth amendments. The district court granted the school district's motion for summary judgment, finding that there was no evidence that any board member was motivated by Mr. Cox's candidacy when voting to terminate him.

## II

We review the district court's order granting summary judgment *de novo*, applying the same legal standards as the district court, and viewing all facts and reasonable inferences in the light most favorable to Mr. Cox, the non-moving party. *See Atheists of Florida, Inc. v. City of Lakeland,* 713 F.3d 577 (11th Cir. 2013).

## III

Mr. Cox first argues that the district court erred by evaluating his claim under the four-step analysis ordinarily applied when a government employee alleges that his termination violated his First Amendment rights. *See, e.g., Moss v. City of Pembroke Pines*, 782 F.3d 613, 617 (11th Cir. 2015).  We have long applied this analysis in cases, like this one, "where the state denies discharging the employee because of speech." *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989). *See also Carter v. City of Melbourne*, 731 F.3d 1161, 1168 (11th Cir. 2013).

First, we consider whether the plaintiff's speech was made as a citizen, rather than as an employee, and whether it implicated a matter of public concern. *See Moss*, 782 F.3d at 617-18. "If this threshold requirement is met, we then weigh Plaintiff's First Amendment interests against the [government]'s interest in regulating his speech." *Id*. at 618. "The[se] first two elements are questions of law designed to determine whether the First Amendment protects the employee's speech." *Battle v. Bd. of Regents for Georgia*, 468 F.3d 755, 760 (11th Cir. 2006). At the third stage, we consider whether the plaintiff's speech was a substantial motivating factor in his dismissal. *See Anderson v. Burke County, Ga*., 239 F.3d 1216, 1219 (11th Cir. 2001). If the plaintiff succeeds in showing the first three factors, the burden shifts to the government to show, by a preponderance of the evidence, that it would have terminated the plaintiff absent the protected speech. *See id*.

Here, the district court concluded that Mr. Cox's claim failed at the third stage of the analysis, because there was no evidence that the board's decision was motivated by his speech. Indeed, the court was doubtful whether any board member was even aware of Mr. Cox's candidacy; eight out of the nine board members provided affidavits explaining that their votes were unrelated to any political expression on the part of Mr. Cox and were instead motivated by concerns about his job performance.

4

Mr. Cox contends that, rather than applying this four-step analysis, the district court should instead have looked to *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). *Randall* concerned a § 1983 claim brought by an employee of a district attorney's office. The plaintiff alleged that he had been terminated because he was running against the district attorney's husband for chairman of the Clayton County Board of Commissioners. *See id.* at 714.  Because *Randall* was an appeal from the grant of a motion to dismiss, we accepted as true the plaintiff's allegations regarding the reasons why he was fired. *See id.* at 705.  We held that candidacy is a form of expression entitled to some degree of First Amendment protection. *See id.* at 710. And we reversed the district court's dismissal of the plaintiff's claim because, assuming the plaintiff had indeed been fired for his candidacy, "the state ha[d] no interest in preventing [him] from running for office." *Id.* at 714.

This case, unlike *Randall*, comes to us on a motion for summary judgment. At the summary judgment stage, the district court was not required to accept as true the allegations in Mr. Cox's complaint regarding the reason why he was terminated. And although *Randall* makes clear that Mr. Cox's candidacy was entitled to some degree of First Amendment protection, it does not resolve the central defect in his claim—namely, the lack of evidence that his termination was motivated by that candidacy.

5

Mr. Cox also urges us to rely on *Underwood v. Harkins*, 698 F.3d 1335 (11th Cir. 2012). *Underwood* concerned an elected superior court clerk's decision to terminate a deputy clerk, who had the same statutory duties and powers as the superior court clerk and who had run against her in a primary election. "Our holding . . . [wa]s that an elected official may dismiss an immediate subordinate for opposing her in an election without violating the First Amendment if the subordinate, under state or local law, has the same duties and powers as the elected official." *Id*. at 1343. Even if we assume that *Underwood* is of relevance here, it does not help Mr. Cox. Again, he did not present any evidence allowing a jury to find that he was terminated because of his candidacy.

In sum, we disagree with Mr. Cox that the district court failed to properly analyze his claim.[1]

## IV

Mr. Cox also argues that the district court erred by failing to view the record in the light most favorable to him, as it was required to do in reviewing the school district's motion for summary judgment.

---

[1] The district court stated in its order that Mr. Cox had to show that the board's conduct violated a clearly established right in order to overcome qualified immunity. *See* D.E. 37 at 13. This was error. A local government entity like the board is not entitled to assert qualified immunity. *See Owen v. City of Independence*, 445 U.S. 622, 649-50 (1980). The error is harmless, however, because there is no triable issue as to whether the termination was based on Mr. Cox's candidacy.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing that there is no genuine dispute as to any material fact, and may discharge this burden "by pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986).  The nonmoving party then has the burden of coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, the school district pointed out the absence of evidence that any board member was aware that Mr. Cox was running for office when the board voted to terminate him on February 1, 2016. The school district also highlighted the testimony of the eight board members, who filed affidavits denying that their vote was motivated by Mr. Cox's candidacy and enumerating various problems with Mr. Cox's job performance. These included Mr. Cox's general handling of department funds, his efforts to involve school district police officers in Atlanta-area drug surveillance activities, complaints from school administrators about Mr. Cox's handling of certain security issues, and an increase in the department's annual budget under his watch from about $1.5 million to about $7 million.

7

Mr. Cox came forward with two factual assertions in support of his allegation that the board's decision to terminate him was motivated by his candidacy. First, he alleged that an e-mail was sent prior to the board meeting alerting the board members about his candidacy. But the school district provided the district court with a copy of the e-mail, which showed that it was sent after—not before—the board's decision to terminate Mr. Cox. Second, Mr. Cox pointed to testimony by then-Superintendent Luvenia Jackson that, prior to the board's decision, chairwoman Pam Adamson approached Ms. Jackson and asked her if Mr. Cox planned to run for sheriff. According to Ms. Jackson, she answered that she did not know. The district court concluded from this testimony that even after speaking with Ms. Jackson, Ms. Adamson did not know whether Mr. Cox planned to run. The district court also observed that even if Ms. Adamson had known about (and her vote had been motivated by) Mr. Cox's candidacy, at least seven other board members voted to terminate Mr. Cox despite not knowing about his candidacy. Given that the decision to terminate Mr. Cox required only a five-vote majority, the district court concluded that the board would have reached this decision irrespective of his candidacy. *See Bryson*, 888 F.2d at 1565 (explaining that the government prevails if it shows by a preponderance of the evidence that it would have terminated the employee absent the employee's protected speech).

8

We find no error in the district court's analysis. Absent any indication that any board member other than Ms. Adamson was even aware of Mr. Cox's candidacy, Mr. Cox did not come forward with sufficient facts to show a genuine dispute as to the reasons for his termination.

Mr. Cox also argues that the performance problems listed in the board members' affidavits are mere pretext. Although he does not dispute the veracity of the claims the affidavits make about his job performance, he argues that his complained-about conduct was relatively minor and took place long before the decision to terminate him. Mr. Cox also points out that then-Superintendent Jackson consistently gave him high performance ratings during his tenure as Director of Safety and Security. Therefore, Mr. Cox argues, the decision to fire him was so heavy-handed as to make the proffered explanations "unworthy of credence and belief." Appellant's Br. 25.

We decline to assess whether the board's termination of Mr. Cox was a wise employment decision. For purposes of Mr. Cox's § 1983 claim, it suffices to note that even if we agreed with Mr. Cox that the board's decision was heavy-handed under the circumstances, he has not come forward with sufficient facts to establish a genuine dispute as to whether his termination was motivated by his candidacy.

**V**

9

For the foregoing reasons, we affirm the district court's order granting summary judgment to the Clayton County School District.

**AFFIRMED.**