[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11240
_____

D.C. Docket No. 0:11-cv-62595-WJZ


RICHARD MOSS,

Plaintiff-Appellant,

versus

CITY OF PEMBROKE PINES, a Municipality, BOARD OF COMMISSIONERS
FOR THE CITY OF PEMBROKE PINES, JOHN PICARELLO,

Defendants-Appellees,

FRANK C. ORTIS, individually, et al.,

Defendants.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 31, 2015)

Before HULL, JULIE CARNES, and WALKER,[*] Circuit Judges.

JULIE CARNES, Circuit Judge:

Plaintiff appeals the district court's order granting defendants judgment as a matter of law on Plaintiff's First Amendment retaliation claim. Plaintiff asserted the claim after being terminated from his position as Assistant Fire Chief of the City of Pembroke Pines ("the City"). Plaintiff was terminated after the City eliminated the Assistant Fire Chief position for what the City said were budgetary reasons. Plaintiff contends, however, that he was terminated in retaliation for his speaking out about the City's handling of budget and pension issues. After a trial, the district court held that Plaintiff had failed to show that his speech was protected by the First Amendment or that his interest in the speech outweighed the City's interest in avoiding dissension within the fire department. Accordingly, the district court granted judgment as a matter of law. After a careful review of the record, and with the benefit of oral argument, we affirm.

## BACKGROUND

The City hired Plaintiff as a firefighter in 1988. Over the next 18 years, Plaintiff steadily moved up the ranks in the City's fire department until he was promoted to the Assistant Fire Chief position in 2006. As the Assistant Fire Chief, Plaintiff was second in command to Fire Chief John Picarello and involved in

_____

[*] Honorable John Walker, Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

2

every aspect of running the fire department.  In addition to his regular duties in the fire department, Plaintiff was elected in 2004 to serve on the City's pension board. He remained on the board until he was terminated.  Plaintiff's job on the board was to ensure that the pension plan was administered in accordance with the City's ordinance.

During all relevant times, the City's fire department, police department, and general employees had separate collective bargaining agreements between respective unions and the City.  Plaintiff joined and was active in the firefighter union between 1989 and 2004, serving on the executive board and then as president of the union in 2003.  Throughout this time period, Plaintiff was a member of the fire department's bargaining unit and had rights under the collective bargaining agreement.  That ceased, however, when he accepted the Assistant Fire Chief position.  As a managerial position, the Assistant Chief position did not permit membership in the bargaining unit or provide for rights under its collective bargaining agreement.

In September 2009, the City approved a budget for the upcoming year that was insufficient to fund the various collective bargaining agreements.  The City subsequently sought pension concessions and pay cuts from its employees, claiming that it needed to renegotiate the collective bargaining agreements on the ground of "fiscal urgency."  Although he was not directly affected, Plaintiff was

3

critical of the City's handling of the budget and collective bargaining agreement negotiations.  Plaintiff claims that he voiced his criticism to Chief Picarello, various fire department employees, and other community members, when he commented on several occasions between January and May 2010 that the City had manufactured the fiscal urgency and was negotiating with employees in bad faith.

The Assistant Fire Chief position was eliminated in June 2010, and Plaintiff was terminated.  Plaintiff contends that the manner of his termination was unprecedented, as the City had never eliminated a position from the fire department except by attrition.  In addition, Plaintiff claims that he was not allowed to apply for a vacancy in the fire department in spite of his history of exemplary evaluations and obvious qualification for the position.  Based on these facts, Plaintiff alleges that he was terminated in retaliation for his speech.

Following his termination, Plaintiff filed this § 1983 action against the City, the Board of Commissioners, and Chief Picarello.  The district court dismissed Plaintiff's claim against the Board as duplicative of his claim against the City, and dismissed his claim against Picarello on the ground of qualified immunity. Plaintiff did not challenge those rulings, and does not raise any arguments concerning the Board or Picarello on appeal.

Plaintiff's claim against the City proceeded to trial.  At the close of the evidence, the City renewed its previously filed motion for judgment as a matter of

4

law.  In support of its motion, the City argued that (1) Plaintiff's speech was not protected by the First Amendment because it was made pursuant to his official duties and (2) the City's interest in avoiding dissension within the fire department outweighed Plaintiff's interest in the speech.  After hearing arguments, the district court announced that it would grant the renewed motion in a written order to follow.

In its written order, the district court found that Plaintiff had failed to present evidence that he spoke in his capacity as a private citizen rather than as a fire department employee.  Accordingly, the court held that Plaintiff's speech was not protected by the First Amendment.  Alternatively, the court held that the City's interest in restricting Plaintiff's speech outweighed Plaintiff's First Amendment interests.  As to the latter, the court's holding was based on Chief Picarello's testimony that although he had instructed his staff not to get involved in the collective bargaining agreement controversy, Plaintiff admitted that he had refused to follow this directive.  According to the court, this evidence supported the City's theory that Plaintiff's speech threatened dissension within the fire department and, as a result, First Amendment protection was not warranted.

## DISCUSSION

### I.    Standard of Review

We review *de novo* the district court's ruling on a motion for judgment as a

5

matter of law.  *Hubbard v. BankAtlantic Bancorp., Inc.*, 688 F.3d 713, 723 (11th Cir. 2012).  In conducting our review, we consider all of the evidence presented at trial and resolve any material factual disputes in favor of the nonmoving party.  *Id.* at 724.  So viewing the evidence, the Federal Rules permit the entry of judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party."  Fed. R. Civ. P. 50(a)(1).

## II.    Analysis

Plaintiff's First Amendment claim is governed by a four-stage analysis.  *See Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013).  First, we consider whether Plaintiff's speech was made as a citizen and whether it implicated "a matter of public concern."  *Id.* at 1168-69 (quoting *Rankin v. McPherson*, 483 U.S. 378, 384 (1987)) (internal quotation marks omitted).  If this first threshold requirement is satisfied, we then weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote "the efficiency of the public services it performs through its employees."  *Id*. (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)) (internal quotation marks omitted).  The above two issues are questions of law that are decided by the court.  *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 760 (11th Cir. 2006).  The court's resolution determines whether Plaintiff's speech is protected by the First Amendment.  *Id.*

If his speech is so protected, the third stage of the analysis requires Plaintiff

6

to show that it was a substantial motivating factor in his termination. *Id*. If Plaintiff is able to make this showing, the burden shifts to the City to prove that it would have terminated Plaintiff even in the absence of his speech. *Id*. Because these final two issues, which address the causal link between Plaintiff's speech and his termination, are questions of fact, a jury resolves them unless the evidence is undisputed. *Id*.

The present appeal concerns only the first two steps of the analysis: (1) whether the speech at issue met the citizen-public concern requirement and (2) whether the City's interest in restricting that speech outweighed the employee's wish to be heard. Because the district court determined, as a matter of law, that Plaintiff had failed to show that his speech was made in his capacity as a citizen or that his First Amendment rights outweighed the City's interest, it was unnecessary for the court to submit to the jury the causation question encompassed by the last two prongs of the analysis.

### A.    Plaintiff's speech is not protected under *Garcetti*.

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court addressed the first prong of the First Amendment analysis, clarifying that speech made pursuant to an employee's job duties is not speech made as a citizen and is therefore <u>not</u> protected by the First Amendment. *Id*. at 421. Since *Garcetti*, this Court has emphasized that a public employee cannot meet the threshold for

7

proving a First Amendment violation merely by showing that the speech at issue addressed a subject of public concern.  He must also show that he spoke in his capacity as a citizen, rather than as an employee.  *See Hubbard v. Clayton Cnty. Sch. Dist.*, 756 F.3d 1264, 1267 (11th Cir. 2014).  The City does not challenge the district court's holding that Plaintiff spoke on a topic of public concern.  The issue on appeal then is the capacity in which he spoke.

*Garcetti* declined to provide a "comprehensive framework" for deciding this question, because the plaintiff there admitted that he spoke pursuant to his official duties.  *Garcetti*, 547 U.S. at 424.  Nevertheless, *Garcetti* provided some general guidance.  The central inquiry is whether the speech at issue "owes its existence" to the employee's professional responsibilities.  *Id.* at 421.  Factors such as the employee's job description, whether the speech occurred at the workplace, and whether the speech concerns the subject matter of the employee's job may be relevant, but are not dispositive.  *Id.* at 420-21, 424.  *Garcetti* instructed that "[t]he proper inquiry is a practical one."  *Id.* at 424.

### 1.    Plaintiff's Job Duties

The evidence presented at trial established that Plaintiff's job duties as Assistant Fire Chief encompassed every aspect of running the fire department.  As the Fire Chief's second-in-command, Plaintiff was responsible for assuming all of the Chief's duties in his absence.  On a day-to-day basis, Plaintiff supervised the

8

Division Chiefs directly below him and served as a liaison between the Fire Chief and employees down the chain of command.  Plaintiff directly participated in preparing and trying to find savings in the budget, hiring, training, and management of employees, dispatch, and logistics.  He had additional duties arising from his service on the pension board and on several committees, including a committee designed to foster cooperation between labor and management.  Plaintiff testified that his overarching responsibility as Assistant Fire Chief was to ensure that the fire department provided the best service possible, from its receipt of an emergency call to the conclusion of its response.

### 2.    Plaintiff's Speech

Plaintiff relies on four categories of speech to support his claim:

(1) Statements made at a February 2010 pension board meeting during which Plaintiff told City Risk Manager Daniel Rotstein that his calculation of the percentage of payroll required to fund the pension was inaccurate;

(2) Statements made at a May 2010 staff meeting during which Plaintiff disagreed with his boss, Chief Picarello, that the City's decision to outsource its general employees did not impact the fire department and also suggested that the City had both created a fiscal urgency and was not negotiating in good faith;

(3) Comments Plaintiff made in April and May 2010 to various fire department employees, including Union President and Fire Captain Garcia,

9

Division Chief Whitworth, and Assistant Division Chief Cunningham, that the City was lying and negotiating in bad faith with respect to a proposal that employees agree to pension concessions or take a 6% pay cut and to a subsequent proposal that employees agree to concessions or take a 30% pay cut; and

(4) General conversations with "community members," such as Plaintiff's family and friends, about the budget and collective bargaining agreement issues.

### 3.    *Garcetti* Analysis

Plaintiff testified that all of his speech was motivated by his belief that the City's actions would negatively impact the fire department's provision of services. Plaintiff thought the collective bargaining agreement negotiations and proposed benefit concessions would affect the fire department's ability to attract and retain the quality employees needed to maintain a high level of service. Plaintiff's witness, Assistant Division Chief Cunningham, conceded that Plaintiff's speech related to the fire department's provision of services, particularly its ability to attract and retain personnel. This testimony does not help Plaintiff, however, because it confirms that Plaintiff's speech was made in furtherance of his self-described responsibilities as the City's Assistant Fire Chief, and not as a private citizen. *See D'Angelo v. Sch. Bd. of Polk Cnty., Fla.,* 497 F.3d 1203, 1210-11 (11th Cir. 2007) (holding that a high school principal's charter conversion efforts were made in furtherance of his responsibility to obtain the best educational

10

outcome for his students).

Specifically, Plaintiff attended the February 2010 pension board meeting as a representative of the fire department and pursuant to his duties as a pension board trustee. On their face, his comments about the costs to fund the pension were in furtherance of his official responsibility to ensure that the pension was administered in accordance with its governing ordinance. Likewise, Plaintiff's participation in the May 2010 staff meeting was one of his assigned duties, and his comments at that meeting primarily concerned the impact of the City's actions on the regular operations of the fire department for which Plaintiff was admittedly responsible. Thus, Plaintiff's speech at the pension board and staff meeting clearly does not qualify for First Amendment protection under *Garcetti*.

Neither are Plaintiff's statements to other fire department employees during April and May 2010 protected under this Court's post-*Garcetti* precedent. These statements relate to the City's proposal that fire department employees accept pension concessions or agree to a 6% pay cut, and its later proposal increasing the pay cut to 30%. Many employees, including Garcia, Whitworth, and Cunningham, went to Plaintiff for guidance on the concession/pay cut issue. They did so because of Plaintiff's experience and leadership role in the department and on the pension board. Plaintiff's statements in response were made in accordance with his role as a liaison between the Fire Chief and employees down the chain of

11

command.  In addition, Plaintiff's position as Assistant Fire Chief gave his statements legitimacy.  Further, Plaintiff emphasized in his statements that the City's demand for concessions impacted the day-to-day operations of the fire department, which Plaintiff was responsible for overseeing.

That Plaintiff was not required to provide the requested guidance—in fact, he had been instructed to keep his opinions about the collective bargaining agreement issue to himself—is not determinative.  *See Abdur-Rahman v. Walker*, 567 F.3d 1278, 1284 (11th Cir. 2009) (noting that an employee may speak pursuant to his official duties even when his duties do not mandate the particular speech at issue); *Battle*, 468 F.3d at 761 n. 6 (identifying the relevant issue as whether a public employee was speaking pursuant to an official duty, not whether that duty was part of the employee's everyday job functions).  We have rejected "narrow, rigid descriptions of official duties urged upon us to support an inference that public employees spoke as private citizens."  *Abdur-Rahman*, 567 F.3d at 1284.  And we have held, in an analogous situation, that a high-ranking employee's broad administrative responsibilities rendered his speech unprotected.[1]

---

[1] The district court put some emphasis on the source of the information underlying Plaintiff's speech:  that is, the fact that Plaintiff learned about the details of the pension and budget issues during the course of his job duties.  Our decision is not based on the source of Plaintiff's knowledge about the subject matter of his speech.  *See Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014) (holding that a public employee's testimony, compelled by subpoena, but given outside of the course of his ordinary job duties, is protected by the First Amendment even when it concerns information learned during the course of the employee's job).  Rather, it is based on our conclusion that Plaintiff spoke in furtherance of his many self-described duties as

12

*See D'Angelo*, 497 F.3d at 1210.

Finally, with regard to Plaintiff's conversations with other community members, we agree with the district court that the slim evidence he offered is insufficient to make Plaintiff's threshold First Amendment showing.  Plaintiff's testimony as to these conversations was limited to a few sentences in which he stated generally that he spoke to various friends and family members about the budget and collective bargaining agreement issues.  Plaintiff provided a list of people that he allegedly discussed these issues with, and he indicated that these conversations occurred on the phone, in his driveway, in restaurants, and at similar places.  None of the community members identified by Plaintiff testified at trial.

Contrary to Plaintiff's argument, the district court did not make an improper credibility determination as to his testimony concerning this speech.  Rather, the court held that Plaintiff's testimony failed to establish that his conversations with community members were protected under *Garcetti*.  To apply *Garcetti*, we have to consider the "content, form, and context" of the allegedly protected speech in light of the plaintiff's job duties.  *Abdur-Rahman*, 567 F.3d at 1283 (quoting *Vila v. Padron*, 484 F.3d 1334, 1340 (11th Cir. 2007)) (quotation marks omitted).  Plaintiff did not provide sufficient information to draw any conclusions about the "context and form" of his community member speech, and he only described its

the Assistant Fire Chief.

13

content in the most general terms.  Moreover, there is no evidence to suggest that the City was aware of this speech, which, from Plaintiff's vague description, appears to have been made merely in private discussions with family members and friends.

### B.     Plaintiff's speech is not protected under *Pickering*.

The district court's alternative holding concerned the second stage of the First Amendment analysis, known as the *Pickering* balancing test.  *See Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, Will Cty.*, 391 U.S. 563 (1968).  The *Pickering* test seeks to arrive at a balance between the employee's interest in commenting on matters of public concern and his employer's interest in efficiently providing public services.  *Leslie v. Hancock Cnty. Bd. of Educ.*, 720 F.3d 1338, 1346 (11th Cir. 2013) (citing *Pickering*, 391 U.S. at 568).  The "manner, time, and place" of the challenged speech and "the context" in which it arose are relevant to the *Pickering* balance.  *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)) (quotation marks omitted).  Other pertinent considerations are whether the statement:

> impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Id.* (quoting *Rankin*, 483 U.S. at 388) (quotation marks omitted).  Indeed, we have

14

recognized a heightened need for order, loyalty, and harmony in a quasi-military organization such as a police or fire department. *See Anderson v. Burke Cnty., Ga.*, 239 F.3d 1216, 1222 (11th Cir. 2001).

Applying the above analysis, the district court held that the City's interest in avoiding dissension and discord in the fire department, particularly during the very sensitive and volatile negotiations with its employees, outweighed Plaintiff's interest in expressing his opposition. Its holding is well-supported by the trial transcript. Plaintiff conceded that the budget issues and collective bargaining agreement negotiations were divisive topics among City employees. In particular, the City required 100% agreement to either pension concessions or a pay cut; employees disagreed on the more desirable option, depending on where they were in their career; and tension arose between employees who wanted to accept concessions and those who preferred to take a pay cut. Plaintiff, himself, admitted that the tension over concessions escalated to violence among employees in the police department. Under the circumstances, Chief Picarello had a right to insist that Plaintiff, who was his Assistant Fire Chief and second-in-command, refrain from commenting on the budget and collective bargaining agreement issues. Plaintiff refused to do so.

Plaintiff's argument that the City failed to show that Plaintiff's speech had any actual negative impact on the fire department is irrelevant. The government's

15

legitimate interest in avoiding disruption does not require proof of actual disruption. *Anderson*, 239 F.3d at 1220-21. Reasonable possibility of adverse harm is all that is required. *Id.* at 1221 (a public employer "need not wait for disruption or disturbance to occur before acting"). The trial transcript contains a wealth of evidence to support such a showing, including Plaintiff's own testimony.

## CONCLUSION

In summary, the district court correctly ruled that the speech by Plaintiff at issue on this appeal was not protected by the First Amendment. Alternatively, even if the speech were so protected, the City's interest in restricting that speech outweighed Plaintiff's desire to express his opposition. For these reasons, the district court correctly granted the City judgment as a matter of law on Plaintiff's claim that he was terminated from his position in retaliation for the exercise of his First Amendment rights.

Therefore, we **AFFIRM** the judgment of the district court.

16