[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13835
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00244-WS-M


MORRIS POLION,

                                                        Plaintiff-Appellant,

versus

THE CITY OF GREENSBORO,
CHIEF WILLIE HUDSON,
MICHAEL HAMILTON,

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(June 4, 2015)

Before HULL, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Morris Polion, a former City of Greensboro police officer, appeals the district court's grant of summary judgment to the City of Greensboro ("Greensboro"), the Chief of Police Willie Hudson, and the Assistant Chief of Police Michael Hamilton (collectively "the Defendants") on his 42 U.S.C. § 1983 claim of First Amendment retaliation. After review, we affirm.[1]

## I. BACKGROUND FACTS

In the summer of 2012, Plaintiff Polion was terminated from the police department after a citizen complained. The citizen reported that Officer Polion, while responding to a domestic violence call at her apartment, had taken her television and would not return it. Defendant Chief Hudson conducted an investigation into the citizen's complaint and recommended Plaintiff Polion's termination. A three-member grievance committee conducted a pre-disciplinary hearing, at which Plaintiff Polion, Defendant Chief Hudson, and the complaining citizen all gave evidence. Afterward, the grievance committee recommended unanimously that Plaintiff Polion be terminated, and the city council voted unanimously to accept the grievance committee's recommendation.

---

[1]We review a district court's summary judgment ruling <u>de novo</u>, applying the same legal standards as the district court. <u>Carter v. City of Melbourne</u>, 731 F.3d 1161, 1166 (11th Cir. 2013). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); <u>Carter</u>, 731 F.3d at 1166.

In his § 1983 action, Plaintiff Polion claimed he was actually terminated in retaliation for complaints he made about Defendants Chief Hudson and Assistant Chief Hamilton.  Specifically, Polion claimed that over a two year period, he complained to Greensboro's mayor and two city council members about misconduct by Hudson and Hamilton, including obstructing justice, mishandling contraband, and using excessive force. [2]

The district court granted summary judgment, concluding, <u>inter alia</u>, that Plaintiff Polion had not presented evidence from which a reasonable jury could find that Polion's complaints about Defendants Hudson and Hamilton were a substantial motivating factor in the decision to terminate him.  More particularly, the district court determined that Polion's evidence did not "create a jury issue as to whether Hudson acted with a retaliatory motive" when Hudson recommended that Polion be terminated and testified at the pre-disciplinary hearing.

## II.  DISCUSSION

Although a government employer may not discharge a public employee in retaliation for speech protected under the First Amendment, a public employee's free speech right is not absolute.  <u>Carter v. City of Melbourne</u>, 731 F.3d 1161,

---

[2]In addition to a First Amendment retaliation claim, Plaintiff Polion's complaint also asserted Equal Protection and Due Process claims under § 1983 and claims of outrage and negligent supervision, training, and retention under Alabama law.  The district court granted summary judgment as to all of the state law claims and to some, but not all, of the Equal Protection and Due Process claims.  Later, Plaintiff Polion voluntarily dismissed his remaining Equal Protection and Due Process claims with prejudice.  On appeal, Polion raises no issue as to any of these claims except his First Amendment retaliation claim.

1168 (11th Cir. 2013). In evaluating a First Amendment retaliation claim, we apply a four-part test. Moss v. City of Pembroke Pines, 782 F.3d 613, 617-18 (2015). First, as a threshold matter, we consider "whether Plaintiff's speech was made as a citizen and whether it implicated a matter of public concern." Id. (quotation marks omitted). If so, "we then weigh Plaintiff's First Amendment interests against the City's interest in regulating his speech to promote the efficiency of the public services it performs through its employees." Id. at 618 (quotation marks omitted). These first two elements raise questions of law decided by the court and determine "whether Plaintiff's speech is protected by the First Amendment." Id. Third, we consider whether the plaintiff has shown that his protected speech "was a substantial motivating factor in his termination." Id.[3] "If Plaintiff is able to make this showing, the burden shifts to the City to prove that it would have terminated Plaintiff even in the absence of his speech." Id. The last two parts of the test, which address causation, are questions of fact to be resolved by the jury unless there is no factual dispute. Id.

Here, the district court concluded, and the parties do not dispute, that Polion was speaking as a citizen about matters of public concern when he complained

---

[3]The third prong is sometimes formulated as "whether the employee's speech played a 'substantial part' in the government's decision" to terminate the employee. See, e.g., Carter, 731 F.3d at 1168 (equating the showing that the speech played a "substantial part" with the showing that the speech "was a substantial motivating factor in the state's employment decision"); Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (11th Cir. 1989) (doing same and citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977)).

4

about Defendants Chief Hudson and Assistant Chief Hamilton and that Polion's First Amendment interests in complaining outweighed Greensboro's interest in regulating his speech. This appeal thus addresses the third prong of the analysis—whether Polion met his burden to present evidence that his complaints about Hudson and Hamilton were a substantial motivating factor in the decision to terminate him.

This Court has said that "it is neither possible nor desirable to fashion a single standard" and that instead the court must "examine the record as a whole to ascertain whether [the employee] presented sufficient evidence for a reasonable jury to conclude that his protected speech was a 'substantial' motivating factor in the decision to terminate him." Stanley v. City of Dalton, 219 F.3d 1280, 1291 (11th Cir. 2000) (quotation marks omitted and alteration adopted). In Stanley v. City of Dalton, we identified several relevant factors to consider, including: (1) whether termination closely followed the protected speech; (2) whether the employee showed that other explanations for the termination were pretextual; (3) whether the employer made comments connecting the termination to protected speech; (4) whether the employer provided varied explanations for the termination; (5) who initiated termination proceedings against the employee; (6) whether there was evidence of management's hostility; and (7) whether the employer had a

motive to retaliate.  Id. at 1291 n.20.  No one factor is outcome determinative, and the employee's burden is not a heavy one.  Id.

Here, the district court did not err in concluding that Plaintiff Polion presented insufficient evidence to create a jury question as to whether Polion's complaints about Defendants Hudson and Hamilton were a substantial motivating factor for his termination.  As the district court noted, Polion did not claim that either the grievance committee or the city council harbored any retaliatory animus when they voted unanimously to terminate him.  Instead, Polion claimed that Defendant Hudson's retaliatory motive for investigating Polion and recommending his termination infected the termination process, essentially a "cat's paw" argument.  To show causation through a cat's paw theory, the plaintiff must at a minimum show that the ultimate decision-maker followed a biased recommendation.  See, e.g., Staub v. Proctor Hosp., 562 U.S. 411, ___, 131 S. Ct. 1186, 1193 (2011); Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999).  Here, Polion did not present evidence that Chief Hudson's recommendation was biased.  Rather, it is undisputed that Chief Hudson's recommendation was based on his investigation, which was initiated in response to a civilian complaint and uncovered evidence substantiating that complaint.

In particular, undisputed evidence in the record established that the civilian, after several unsuccessful months of trying to get Polion to return her television,

6

approached Assistant Police Chief Hamilton at a ballgame "on her own" and told him about Polion, which triggered the investigation. While Polion testified at his deposition that he believed Hudson wanted to find evidence of misconduct in order to have Polion terminated and that Hamilton, acting as Hudson's accomplice, "motivated" the civilian to file the complaint against Polion, Polion offered no admissible evidence to support these claims.[4]

Furthermore, the evidence Chief Hudson uncovered when he investigated the citizen's complaint supported Hudson's conclusion that Polion had engaged in the alleged misconduct and was dishonest during the investigation. Specifically, it was undisputed that during his investigation, Chief Hudson interviewed witnesses and gathered evidence that: (1) Polion, in contravention of police department policy, took the citizen's television from her apartment even though she told Polion it belonged to her; (2) Polion had an accompanying officer move the television to an apartment rented in his own name, where it stayed for several months despite the citizen's repeated requests for its return; and (3) although during the investigation Polion claimed that another officer lived in the apartment where the

---

[4]Polion testified to several inadmissible hearsay statements about events for which he clearly had no personal knowledge. For example, Polion claimed that "several people in the community" said Hudson "was going around -- he's pretty much known for that -- going around saying, okay, I'm getting rid of these three officers [including Polion], they're going to be gone." Polion also claimed he spoke with, and obtained a statement from, the civilian's boyfriend in the domestic dispute and that the boyfriend said police officers had "pulled [him] out of his vehicle, placed [him] on the ground, asking him would he file charges against [Polion]" and that the officers "had been trying to force him to say that it was not his TV." Polion, however, did not submit sworn statements from any of these individuals.

television was ultimately found by Chief Hudson, the other officer did not in fact live in that apartment.  Indeed, although Polion denied the citizen's version of events, all of the other witnesses Chief Hudson interviewed about the television incident contradicted Polion's version of events.

In short, as the district court explained, the evidence that Chief Hudson's investigation revealed was "not so flimsy as to suggest Hudson did not truly believe [Polion's misconduct] had occurred," and could reasonably have motivated an employer to terminate an employee.  In fact, when the grievance committee heard both Polion's and the civilian's versions of the television incident, it also believed the civilian and not Polion.  The members of the grievance committee all also averred that they voted to recommend Polion's termination due to his misconduct, and Polion presented no evidence that any of the grievance committee members was aware of Polion's complaints.

Considering the Stanley factors, Plaintiff Polion showed that Chief Hudson, assuming he knew of Polion's complaints, had a possible motive to retaliate and was the person who initiated termination proceedings. [5]  But, the problem for Polion is that Hudson was not the person who filed the underlying misconduct

---

[5]Polion did not present any evidence that Chief Hudson knew of Polion's particular complaints to the mayor and city council members.  Rather, Polion presented evidence that after Hudson became Chief of Police, he held a meeting and advised police officers that he was the person they should talk to and that they should not talk to city council members because he would be informed of what was said.  The district court concluded that this evidence created "an issue of fact as to whether Hudson was aware of the plaintiff's complaints about him."

complaint.  And, Polion presented no evidence that the reason for investigating and terminating Polion—his misconduct in taking the television and his dishonesty during the resulting investigation—was pretextual or had ever varied.  Nor did Polion present evidence that city officials, including Hudson and Hamilton, made comments connecting Polion's termination to his complaints or showed any hostility to Polion.  Finally, Polion also failed to show temporal proximity.  Polion admitted he had been complaining about Hudson for two years before he was terminated, and he could not recall any dates (and very few timeframes) for his conversations with the mayor and the city council members.  Under the circumstances, Polion did not present sufficient evidence for a reasonable jury to find that Polion's complaints about Hudson and Hamilton were a substantial motivating factor in his termination.

Polion points to an affidavit of the city clerk, but that affidavit does not create a jury issue as to whether Polion's complaints were a substantial motivating factor for his termination.  In her affidavit, the city clerk stated that Chief Hudson first learned of the television incident on June 14, 2012 and investigated, but then states that the city mayor gave Polion notice of intent to terminate on June 12, 2012.[6]  Polion argues that the dates in the city clerk's affidavit show that Chief

---

[6]In the district court, the Defendants sought permission to file an amended affidavit, explaining that the June 14, 2012 date in the original affidavit was due to a scrivener's error and

9

Hudson decided to terminate him before investigating, but no juror could reasonably rely on this discrepancy because the affidavit also stated that Hudson investigated after he learned of the television incident.

For all these reasons, the district court correctly concluded that Polion provided insufficient evidence that his complaints were a substantial motivating factor in the decision to terminate him and did not err in granting summary judgment to the Defendants on Polion's First Amendment retaliation claim.[7]

**AFFIRMED.**

---

should have stated June 4, 2012. The district court denied the motion because "doing so [would] eliminate the fact issue created by the original."

[7]Because we affirm the district court's entry of summary judgment as to all three Defendants on the merits of the First Amendment retaliation claim, we do not address the district court's alternative rulings that, even if Polion's evidence established a constitutional violation, the individual defendants were entitled to qualified immunity and that the City of Greensboro could not be subject to municipal liability under a cat's paw theory of liability.

10