[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10129
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00679-RH-CAS

KIMBERLY DAWN VANDEWALLE,

Plaintiff,

DOROTHY PENTON,

Plaintiff-Appellant,

versus

LEON COUNTY FLORIDA,
ANDREW SELTZ,
CHAD ABRAMS,
in his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 9, 2016)

Before TJOFLAT, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

In this civil-rights case filed under 42 U.S.C. § 1983, Plaintiff-Appellant Dorothy Penton alleged that Defendants-Appellees Leon County, Florida (the "County"), Andrew Seltz, and Chad Abrams terminated her from her position as Lead Animal Control Officer for the County in retaliation for exercising her First Amendment rights. The district court granted summary judgment to the defendants. After careful review of the record and the parties' briefs, we affirm.

## I.

Penton worked for the County as a Lead Animal Control Officer, sometimes called the Field Supervisor. As Lead ACO, Penton oversaw the field duties of the other Animal Control Officers ("ACOs"), coordinated daily assignments, and trained new ACOs, among other tasks. Penton also saw herself as a resource for the other ACOs and was available to handle work-related issues or problems. Penton's supervisor was the Director of Animal Control, who, in turn, was supervised by the Deputy County Administrator and the County Administrator.

In November 2012, the County hired Defendant Seltz as the Director of Animal Control. While Penton and Seltz initially got along, a rift between them developed over time, due at least in part to Penton's support for and defense of another ACO, Kimberly VanDeWalle, a co-plaintiff in the underlying case who is

2

not a party to this appeal.  In Penton's view, Seltz unfairly disliked and harassed VanDeWalle, applying different rules to her than to other ACOs.  Penton claimed that she was retaliated against by Seltz for defending VanDeWalle.

In many respects Penton's case concerns the sequence of events following a dispute between Penton and Seltz about whether to issue a citation to a particular County resident who had frequent interactions with Animal Control.  On September 12, 2013, Penton responded to a complaint about the resident's home, but she did not issue a citation because she saw no violation.  Seltz chided Penton and told her that she should have issued a citation.  The next day, Seltz sent VanDeWalle to the resident's home to issue a citation based on Penton's observations.  After initially refusing, VanDeWalle did so.

In January 2014, VanDeWalle was called to testify about the citation for a court hearing.  With Seltz present, VanDeWalle testified that she had not observed the violation and that she had been ordered to issue the citation by Seltz.  As a result, the citation was dismissed.  In addition, another ACO, Morgan Strauss, told VanDeWalle that, on that same day in court, Seltz committed perjury while testifying about another citation issued to the same resident.  Penton was not present for these events.

On April 8, 2014, VanDeWalle and Strauss met with an Assistant State Attorney.  During the conversation, Strauss expressed her belief that Seltz had

3

committed perjury in court in January 2014, and VanDeWalle disclosed that she had been ordered by Seltz to issue the resident a citation despite having seen no violation. The Assistant State Attorney asked if they would be willing to execute sworn affidavits attesting to that information. They declined, with the intention of giving the County a chance to resolve these issues.

The next day, April 9, VanDeWalle, Strauss, and Penton met with Vince Long, the County Administrator. VanDeWalle and Strauss recounted what they had told the Assistant State Attorney. Penton discussed various instances of what she viewed to be Seltz's harassment of VanDeWalle at work, including Seltz's refusal to replace VanDeWalle's boots despite the fact that they had a hole in them. Penton also stated that Seltz failed to follow up on citizen complaints about Animal Control staff, which caused animals to die or disappear.[1]

The record also reflects incidents for which Penton was disciplined by Seltz, occasionally triggered by something to do with VanDeWalle. On November 18, 2013, for example, Penton received a call from VanDeWalle complaining about Seltz. Penton then called Seltz and, in her words, "asked him what the hell he thought he was doing." The next day, Penton accused Seltz of trying to fire VanDeWalle. Penton was suspended without pay for this incident.

---

[1] In her brief, Penton references an incident involving Seltz's alleged failure to look for the puppies of a lactating dog that had been found and impounded. The puppies were found five days later, and one of the puppies had to be euthanized. However, there is no specific reference to this incident in the record evidence she cites to establish what was discussed at the hearing, despite her contention that the matter was "specifically" discussed.

4

On May 7, 2014, Penton was suspended without pay for four days for an interaction with Seltz during which she confronted him about not returning her phone calls. That confrontation turned to a dispute over personal use of County cell phones, with both Seltz and Penton asking each other, repeatedly, if they were threatening the other person.

Penton's employment was terminated following an incident on June 24, 2014, when she made a false statement to a fellow employee for the purpose of protecting VanDeWalle, who feared harassment in the office from Seltz and an office administrative assistant. ACOs generally spent their workdays in the field, but they occasionally had to cover certain duties in the office while the administrative assistant took lunch, as provided for in a lunch-relief schedule established by Seltz. On June 24, Penton told the administrative assistant that Penton would be covering VanDeWalle's lunch shift. When asked why, Penton gave the false reason that VanDeWalle had been told by her attorneys to stay away from the administrative assistant and Seltz. VanDeWalle had been told no such thing, but Penton wanted to protect VanDeWalle from further harassment from Seltz and the administrative assistant. In response to Penton's comment, the County took some initial steps to investigate how they could accommodate the attorney's purported request. But Penton was interviewed quickly and she admitted that the request was false. Her employment ended on July 7, 2014.

5

Penton grieved her termination, which was upheld through two levels of appeal. VanDeWalle's employment was terminated near the end of 2014.

Penton and VanDeWalle filed in state court their initial complaint, which the defendants removed to the United States District Court for the Northern District of Florida. Thereafter, Penton and VanDeWalle filed the operative amended complaint, raising claims, among others, of First Amendment retaliation against both the County and Seltz, in his individual capacity, under 42 U.S.C. § 1983.[2] Seltz invoked the defense of qualified immunity. Only Penton's First Amendment retaliation claims are at issue here.

In both her amended complaint and her response in opposition to summary judgment, Penton characterized as protected speech her association with VanDeWalle and her objections to Seltz's retaliation against VanDeWalle. The defendants argued that her speech was not protected because it was made in her role as a supervisor and was not on a matter of public concern. The district court concluded that Penton did engage in some protected speech at the April 9 meeting with Long, the County Administrator, but that her speech did not play a role in her termination. So the court granted summary judgment to the County and Seltz on Penton's claims. Penton now appeals.

---

[2] While Defendant Abrams, the Director of Animal Control after Seltz, was involved in terminating VanDeWalle, he was not involved with Penton's termination. We therefore do not discuss Abrams further.

6

## II.

We review the grant of summary judgment *de novo*, applying the same standards as used by the district court. *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1838 (2016). We construe the record and draw all reasonable inferences in favor of the non-moving party. *Id.* Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Government employers may not demote or discharge public employees in retaliation for speech protected by the First Amendment, but, at the same time, public employees must accept certain limitations on their freedoms as part of their employment. *Alves*, 804 F.3d at 1159. The basic premise in this context is that "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Garcetti v. Ceballos*, 547 U.S. 410, 420, 126 S. Ct. 1951, 1959 (2006) (internal quotation marks omitted).

A "four-stage analysis" governs First Amendment retaliation claims by public employees. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617–18 (11th Cir. 2015); *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759–60 (11th Cir.

2006).  First, we consider whether the employee spoke as a citizen on a matter of public concern.  *Moss*, 782 F.3d at 617.  If that threshold requirement is met, we then weigh the employee's First Amendment interests against the employer's interest in regulating the employee's speech "to promote the efficiency of the public services it performs through its employees."  *Id.* at 618 (internal quotation marks omitted); *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731 (1968).  These first two matters are questions of law that determine whether the employee's speech is protected by the First Amendment.  *Moss*, 782 F.3d at 618.

If the first two stages are satisfied, "the third stage of the analysis requires [the employee] to show that [her speech] was a substantial motivating factor in [her] termination" or other adverse action.  *Id.*  Once that showing has been made, the burden shifts to the employer to prove, by a preponderance of the evidence, that it would have terminated the employee even in the absence of her protected speech.  *Id.*  "In other words, the defendants may show that retaliation was not the but-for cause for the firing."  *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).  The plaintiff then may show that the defendants' proffered reasons are pretextual and that retaliatory animus was the real reason for the adverse action.  *Id.*; *see Hartman v. Moore*, 547 U.S. 250, 259–60, 126 S. Ct. 1695, 1703–04 (2006) ("If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional

motive and resulting harm, despite proof of some retaliatory animus in the official's mind." (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977))).  At bottom, "the employee must prove an improper employer motive." *See Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1419 (2016); *id.* at 1418 ("In a word, it [is] the employer's motive, and in particular the facts as the employer reasonably understood them, that matter[s] [for First Amendment retaliation claims]").  These latter stages, which concern the causal link between the speech and the adverse action, are questions of facts generally subject to resolution by a jury. *Moss*, 782 F.3d at 618.

The district court resolved Penton's claims on the basis that there was no causal connection between her protected speech and her subsequent termination. The court determined that she engaged in some protected speech at the April 9 meeting, during which VanDeWalle and Strauss alleged to the County Administrator that Seltz had committed perjury as part of a vendetta against a particular County resident.  We assume but do not decide that the court correctly resolved the issue of whether Penton engaged in protected speech.  We also do not address the second element—the *Pickering* balancing test—and instead proceed directly to the question of whether a triable issue exists with respect to whether there is a causal connection between Penton's protected speech and her

termination.  Our inquiry is limited to the April 9 meeting because that is the only specific incident on which Penton relies.[3]

For purposes of our analysis, we assume without deciding that Penton has proffered sufficient evidence to establish a *prima facie* case of First Amendment retaliation based on the temporal proximity between the April 9 meeting and her termination following the events on June 24, though the temporal link in this case is weak.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (stating, in a Title VII retaliation case, that "[t]he burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action," but that "mere temporal proximity, without more, must be very close" (internal quotation marks omitted)).  Thus, the burden shifted to the defendants to show that they would have terminated the employee even in the absence of her protected speech.  *See Moss*, 782 F.3d at 618.

Here, the defendants did so.  The defendants produced evidence showing that they terminated Penton for making a false statement to a co-worker in order to

---

[3] In her initial brief, Penton states in passing that the "District Court did not discuss other instances of protected activity concerning Penton and Seltz," and she highlights one other instance that "could certainly fall within the purview of protected activity"—her refusal to issue a citation to the resident in September 2013.  However, she does not make any supporting arguments for why any other instances should be considered protected activity, or even what those instances are apart from the one mentioned, and, for that reason, the defendants contend that she has abandoned reliance on any alleged protected speech other than the April 9 meeting. We agree and accordingly limit our discussion to the April 9 meeting.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

change a lunch-relief schedule established by Seltz. Penton does not dispute that she did, in fact, make the false statement. This incident, at the very least, reflects to some degree a disregard for Seltz's authority as Director. In addition, this incident followed at least two prior incidents for which Penton was disciplined and suspended for insubordination. The first of these incidents occurred well before the alleged false statement. The second of these incidents appears to have had little to do with VanDeWalle or the alleged false statement but instead was triggered by Penton's accusation to Seltz that he was not returning her phone calls. During the discussion that followed, Seltz and Penton both suggested that the other was making threats. Accordingly, we conclude that the defendants have produced substantial evidence that they would have terminated Penton even in the absence of her protected speech. *See id.*

In response, Penton does not argue that the County did not have cause to terminate her employment based on her false statement to a co-worker in order to alter the lunch-relief schedule. She also does not present any evidence to suggest that Seltz or the County did not believe that she had been insubordinate at least twice before. Penton does not dispute that she got into an argument with Seltz on May 7, 2014, in which both parties implicitly accused the other of making threats, regardless of whether an email she sent in connection with that dispute was

insubordinate or not.  Moreover, there is no evidence that another employee who had engaged in similar conduct as Penton had not been suspended.

Instead, Penton relies primarily on timing.  She asserts that "mere weeks after engaging in protected activity, Seltz began targeting Penton," referencing the May 7, 2014, discipline for insubordination.  However, given the November 2013 discipline for insubordination, it does not seem accurate on this record to say that Seltz "began" targeting Penton only after the April 2014 meeting.  Moreover, she provides no reason or evidence to doubt that Seltz, in good faith, believed that Penton had been insubordinate in May 2014, which is our key inquiry when assessing whether an employer or supervisor had an unlawful motive.  *See Heffernan*, 136 S. Ct. at 1419 ("To win, the employee must prove an improper employer motive."); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) (stating, in a Title VII case, that when assessing the employer's motive, "[t]he inquiry . . . centers on the employer's belief, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head").  The fact that this incident happened within a few weeks of the April 9 meeting does not, under these circumstances, suggest that the discipline was motivated by an impermissible retaliatory motive.

Penton also argues that her termination following the June 24, 2014, incident is suspect because "Seltz capitalized on the first opportunity to get rid of Penton

12

after she engaged in protected activity." But that is not factually accurate, as the previously paragraph makes clear. The "first opportunity" was over a month beforehand, on May 7, 2014. And there was no protected activity in between then and the June 24 incident. So overall, the not-particularly-close timing alone is insufficient to establish a triable issue, in light of the defendants' evidence that they terminated her for a permissible reason. *Cf. Hurlbert St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) ("The close temporal proximity between Hurlbert's request for leave and his termination—no more than two weeks, under the broadest reading of the facts—is evidence of pretext, though probably insufficient to establish pretext by itself.").

In sum, we agree with the district court's assessment that, in light of Penton's employment history and the undisputed facts of the June 24 incident, "[n]o reasonable jury could find that the April 9th meeting made any difference." Accordingly, even assuming Penton engaged in speech protected by the First Amendment, no reasonable jury could conclude that the speech and her termination were causally related. *See Moss*, 782 F.3d at 618. Because Penton has not shown a constitutional violation, she cannot meet her burden of demonstrating that Seltz is not entitled to qualified immunity. We therefore affirm the grant of summary judgment to the County and Seltz on Penton's claims of First Amendment retaliation.

13

For these reasons, the judgment of the district court is **AFFIRMED.**