[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14877

Non-Argument Calendar

_____

TASHA ROYSTER,

Plaintiff-Appellant,

*versus*

LARRY ROBINSON,
in his official capacity as President
Florida A&M University,
KELVIN LAWSON,
in his official capacity as Chairman
Florida A&M University,
ELMIRA MANGUM,
in her individual capacity,

2                    Opinion of the Court                    20-14877

                                                    Defendants-Appellees,

JIMMY MILLER,
in his individual capacity,

                                                                Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:19-cv-00517-MW-MAF

_____

Before GRANT, BRASHER, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Tasha Royster appeals the district court's grant of summary judgment in favor of the defendants in Plaintiff's employment-related civil action under 42 U.S.C. § 1983. Plaintiff named as defendants (1) Larry Robinson, in his official capacity as President of Florida Agricultural and Mechanical University ("FAMU"), (2) Kelvin Lawson, in his official capacity as Chairman of the FAMU

Board of Trustees, and (3) Elmira Mangum (former FAMU President), in her individual capacity.[1]  Plaintiff asserts against Defendants a claim for unlawful retaliation in violation of the First Amendment.  No reversible error has been shown; we affirm.


I.    Background


In September 2015, Plaintiff began working as an administrative employee in the Office of the Liaison to the Board of Trustees at FAMU ("Liaison Office").  Between January and March 2016, Plaintiff's direct supervisor -- Linda Barge-Miles -- was out of the office on medical leave.  During Barge-Miles's absence, Jimmy Miller assumed responsibility for supervising the Liaison Office.  Cleve Warren (then-Chairman of the Board) was also involved in overseeing the Liaison Office while Barge-Miles was out.

Shortly after taking over as Plaintiff's supervisor, Miller threatened to fire Plaintiff after discovering that Plaintiff disobeyed his instructions not to communicate directly with members of the Board.  After seeking advice from Chairman Warren, Plaintiff left the office but returned to work the following day.

---

[1] Plaintiff also named as a defendant Jimmy Miller, the Chief of Staff to then-President Mangum, in his individual capacity.  The district court dismissed Plaintiff's claim against Miller for failure to effect proper service; Plaintiff raises no challenge to this ruling on appeal.

4                         Opinion of the Court                    20-14877

A couple of months later, in March 2016, Miller repri-manded Plaintiff for failing to attend a scheduled meeting. Plaintiff responded by asserting that Miller was mistaken. Miller then told Plaintiff to leave campus and threatened to call the police if Plaintiff returned. Plaintiff sought clarification from Chairman Warren and from Barge-Miles about the status of Plaintiff's employment but re-ceived no answer. Based on Plaintiff's exchange with Miller and the silence from Chairman Warren and Barge-Miles, Plaintiff be-lieved her employment with FAMU had been terminated.[2]

In 2019, Plaintiff filed this civil action. In her amended com-plaint, Plaintiff contended that she engaged in constitutionally-pro-tected speech when she made various complaints to her supervi-sors and to other FAMU staff. Plaintiff's complaints fall into four main categories: (1) complaints about FAMU's failure to pay Plain-tiff overtime, (2) complaints about a co-worker's poor work perfor-mance and alleged falsification of timesheets, (3) complaints about a chemical smell in the Liaison Office, and (4) complaints about the suspected presence of illegal drugs in a co-worker's desk. Plaintiff alleged that she was reprimanded wrongfully and then fired in re-taliation for her speech: in violation of the First Amendment, she says.

---

[2] Defendants contend that Plaintiff resigned her position by not returning to work. Viewing the record in the light most favorable to Plaintiff -- as we must at the summary-judgment stage -- we accept that Plaintiff's employment was terminated.

The district court granted Defendants' motion for summary judgment. The district court first concluded that Plaintiff's complaints constituted speech by an employee about private matters and were, thus, not protected by the First Amendment. The district court further determined that -- even if Plaintiff's speech was protected -- Plaintiff had failed to show that her speech played a substantial role in the adverse employment actions. Because Plaintiff demonstrated no constitutional violation (and no violation of a constitutional right that was already clearly established), the district court concluded that Defendants were entitled to summary judgment.

II.    Discussion

We review *de novo* the district court's grant of summary judgment. *See Ave. CLO Fund, Ltd. v. Sumitomo Mitsui Banking Corp.*, 723 F.3d 1287, 1294 (11th Cir. 2013). We view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.* Summary judgment is proper only when the movant proves that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a).

To prevail on a claim of retaliation by a government employer in violation of the First Amendment, a government employee must show (1) that the employee's speech "was made as a citizen . . . and implicated 'a matter of public concern'"; (2) that the

employee's free-speech interests outweigh the employer's interests in regulating speech; and (3) that the speech was a "substantial motivating factor" in the adverse employment action. *See Moss v. City of Pembroke Pines*, 782 F.3d 613, 617-18 (11th Cir. 2015). If the employee fails to show that he spoke as a citizen on a matter of public concern, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Whether an employee's speech constitutes speech on a matter of public concern is a question of law that we review *de novo*. *See Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997).

A.

On appeal, Plaintiff characterizes her complaints as touching upon issues of workplace safety, theft of company time, employee misconduct, and use of illegal substances: issues Plaintiff says are matters of public concern. Plaintiff also contends that -- because her speech on these matters fell outside the scope of Plaintiff's ordinary job duties -- she spoke in her capacity as a citizen.

In determining whether an employee's speech was made as a private citizen or as an employee, "the central inquiry is whether the speech at issue 'owes its existence to the employee's professional responsibilities.'" *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1161 (11th Cir. 2015). When an employee's

20-14877            Opinion of the Court                 7

speech is "made in accordance with or in furtherance of the ordinary responsibilities of her employment," the employee is not speaking as a citizen for purposes of the First Amendment. *See id.* at 1161-62. We have recognized that "formal job descriptions 'often bear little resemblance to the duties an employee actually is expected to perform.'" *See id.* at 1164. Thus, in assessing the citizen-speech element, we apply a "'functional review' of an employee's speech in relation to her duties or responsibilities." *Id.*

We have determined that -- when an employee raises concerns about circumstances that interfere with the employee's ability to perform her job -- the employee's speech is made pursuant to her ordinary job responsibilities. *See id.* at 1164-65 (concluding that employee complaints about a supervisor's alleged mismanagement that interfered with the employees' job performance was speech made pursuant to the employees' ordinary job duties); *Boyce v. Andrew*, 510 F.3d 1333, 1335-37 (11th Cir. 2007) (concluding that employees with the Department of Family and Children Services spoke as employees when they complained to their supervisors about an increase in the size of their caseloads and the lack of adequate assistance: conditions that interfered with the employees' ability to complete their work and caused the employees stress and frustration). We have said that implicit in an employee's ordinary job duties is the duty to inform "'those that would appear to have the most need to know and best opportunity to investigate and correct' the barriers" to the employee's job performance. *See Alves*, 804 F.3d at 1165.

In deciding whether an employee's speech satisfies the "public concern" requirement, we examine "the content, form, and context of a given statement" and determine -- based on the record as a whole -- whether the "main thrust" of the employee's speech was on a matter of public concern. *Alves*, 804 F.3d at 1162. To rise to the level of public concern, an employee's speech "must relate to a matter of political, social, or other concern to the community." *Watkins*, 105 F.3d at 1353. That the public might have some interest or curiosity in the topic of the employee's speech is not enough: the pertinent inquiry is "whether the *purpose* of the employee's speech was to raise issues of public concern." *Alves*, 804 F.3d at 1167 (emphasis in original) (alteration omitted). Whether the employee communicated her concerns publicly or privately is pertinent to an assessment of the employee's motivation in speaking but is not dispositive. *Id.* at 1162.

### 1. Failure to Pay Overtime

Plaintiff says she engaged in protected speech when she complained to Barge-Miles and to Miller that she received no overtime pay for work she performed in excess of forty hours a week. We disagree.

Plaintiff's statements to her direct supervisors about being compensated in-full for the hours Plaintiff worked are statements made by Plaintiff in her capacity as an employee. These statements

were made in furtherance of Plaintiff's ordinary job duties.  Further, the main thrust of Plaintiff's speech was clearly personal in nature.  Plaintiff's speech addressed only her own personal compensation; Plaintiff raised no broader concerns about FAMU's employee compensation policies.  Because Plaintiff's complaints about overtime pay constituted speech by an employee on a private matter, the district court concluded properly that those statements are not protected by the First Amendment.

2.   Starling's Work Performance and Timesheets

Plaintiff made several complaints to Barge-Miles, Miller, Chairman Warren, and to others about her co-worker and officemate, Carl Starling.  Among other things, Plaintiff alleged that Starling (1) failed to report to work during regular business hours and falsified his timesheets, (2) failed to complete competently assigned tasks, and (3) failed to help Plaintiff with the additional workload created by Barge-Miles's absence.  In her emailed complaints about Starling, Plaintiff said she was "overwhelmed" with work and that Starling had not been doing his part to help.  Plaintiff also expressed that Starling's failure to complete adequately assigned tasks, poor communication skills, and "defiant" and "unprofessional behavior" were causing Plaintiff undue stress and interfering with Plaintiff's ability to complete her work assignments.

Plaintiff's complaints about Starling focused chiefly on the negative impact Starling's work performance and attitude was having on Plaintiff's ability to perform her job.  We have concluded that this kind of speech constitutes speech made pursuant to an employee's job responsibilities and not in an employee's role as a citizen. *See Alves*, 804 F.3d at 1164-65; *Boyce*, 510 F.3d at 1335-37.

Moreover, the purpose of Plaintiff's complaints was to seek help from Plaintiff's supervisors in managing Starling's unprofessional behavior and help in reducing Plaintiff's workload and stress. The main thrust of Plaintiff's speech was thus related to a personal matter, not a matter of public concern. *See Alves*, 804 F.3d at 1166 (concluding that plaintiffs' internal complaints about their supervisor constituted speech by "employees on conduct that interfered with their job responsibilities, rather than [speech by] citizens on matters of social, political, or other civic concern."); *Boyce*, 510 F.3d at 1346 (concluding that the "main thrust" of employees' complaints about being overworked and overwhelmed "took the form of a private employee grievance.").  Plaintiff's complaints about Starling are not constitutionally-protected speech.

### 3.  Chemical Smell

Plaintiff complained to Barge-Miles, Chairman Warren, and to several other people about a "strong chemical smell" emanating from Starling's work area.  Plaintiff said the smell burned her throat

and affected her productivity. Plaintiff said she complained to Chairman Warren because Plaintiff wanted him to experience the smell firsthand.

The district court concluded properly that Plaintiff's complaints about a chemical smell were not speech protected under the First Amendment. Plaintiff's complaints about a localized unpleasant odor that affected Plaintiff's work performance was speech made pursuant to Plaintiff's ordinary job duties and, thus, constituted speech by an employee. The record also demonstrates that the purpose of Plaintiff's complaints was to have the offensive smell investigated and corrected, not to raise an issue of public concern. Like the complaints involved in *Alves* and in *Boyce*, Plaintiff's internal complaint focusing on how the complained-of workplace condition interfered with Plaintiff's job performance constituted speech as an employee on a private matter. *See Alves*, 804 F.3d at 1166; *Boyce*, 510 F.3d at 1346.

4. Suspected Illegal Drugs

Plaintiff also says she engaged in protected speech when she reported to Barge-Miles and to a campus security officer that she suspected Starling of possessing illegal drugs. When FAMU failed to act on Plaintiff's complaints about the chemical smell, Plaintiff searched Starling's desk and found a small bag containing a white substance Plaintiff believed was cocaine. Plaintiff notified a

campus security officer, who then called the police. Upon examination, the police determined that the substance was not a drug and took no further action.

We agree with the district court's determination that the chief purpose of Plaintiff's speech was to raise personal, work-related concerns. Plaintiff testified that she decided to search Starling's desk because her reports about a chemical smell had not been investigated adequately and because Plaintiff suspected that she was going to be fired. Viewed in the light of the record as a whole -- including in the context of Plaintiff's earlier unresolved complaints about the chemical smell and about Starling's unprofessional behavior -- Plaintiff's complaints about Starling's suspected drug possession were motivated chiefly by Plaintiff's desire to have Starling's conduct addressed and to improve her own personal working conditions. That the presence of illegal drugs on a university campus might be a topic of interest to the public is not enough by itself to transform Plaintiff's personal grievances about a co-worker and about her personal workspace into a matter of public concern. *See Alves*, 804 F.3d at 1167; *Boyce*, 510 F.3d at 1344 ("A 'public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.'").

B.

Even to the extent that Plaintiff's complaints might constitute protected speech (which we reject), the district court committed no error in determining that Plaintiff also failed to show that her speech was a significant motivating factor underlying the adverse employment acts.

Whether a causal connection existed between the employee's speech and the adverse employment act is a question of fact. *See Moss*, 782 F.3d at 618.

The record demonstrates that the complained-of employment acts (Miller's reprimand of Plaintiff and supposed termination of Plaintiff's employment) occurred immediately after Plaintiff's failure to attend a scheduled meeting and Plaintiff's attempt to correct Miller. The timing of the adverse employment acts -- combined with Miller's earlier threat to fire Plaintiff -- shows that Miller was motivated primarily by what Miller saw as Plaintiff's ongoing failure to comply with his directions.

Nothing evidences sufficiently a causal link between Plaintiff's speech and the adverse employment decisions. Among other things, Plaintiff produced no evidence showing that Miller knew about Plaintiff's complaints about Starling's suspected drug possession.

Viewing the record in Plaintiff's favor, Plaintiff has failed to demonstrate that her complaints constituted speech protected by the First Amendment and failed to demonstrate that her complaints played a significant role in the adverse employment acts.

14                 Opinion of the Court                 20-14877

Plaintiff has established no constitutional violation; we affirm the district court's grant of summary judgment in favor of Defendants.[3]

AFFIRMED.

---

[3] Because we determine that no First Amendment violation occurred, it follows that we also conclude that Defendant Magnum violated no constitutional right that was already clearly established in 2016.  The district court concluded properly that Defendant Magnum is thus entitled to immunity on Plaintiff's individual-capacity claim.